IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OLGA RUTH YBARRA-FUENTES, individually and in her capacity as representative of the estate of JOSEPH GUNTER, deceased, and ERICA MARIE REYES, on behalf of her minor son, C.J.G., | § § § § § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. H-18-1824 |
| VS. | § § § | |
| CITY OF ROSENBERG, *et al*. | § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is a pretrial detainee suicide case. This motion to dismiss requires the court to decide whether the plaintiffs—Olga Ruth Ybarra-Fuentes, the representative of the estate of Joseph Gunter, the deceased, and Erica Marie Reyes, mother of the deceased's son, C.J.G.—have stated claims under 42 U.S.C. § 1983 against the City of Rosenberg, Texas; Rosenberg Police Department officials; employees of the Rosenberg City Jail; and other unknown defendants. The City of Rosenberg moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Ybarra-Fuentes and Reyes responded, and the City replied. (Docket Entry Nos. 4, 10, 13). Individual defendants Dallis Warren, Cody Carr, Joseph Becerra, Michael Gonzalez, Brandon Armstrong, and Thomas Havelka then jointly moved to dismiss for failure to state a claim.[1] (Docket Entry No. 12). Ybarra-Fuentes and Reyes have not responded to the individual defendants' motion.

---

[1] Defendant John Johnson has neither answered nor moved to dismiss the plaintiffs' complaint.

1

Based on a review of the complaint, motions, response, reply, the record, and the applicable law, the court grants the motions to dismiss under Rule 12(b)(6), without prejudice and with leave to amend. Ybarra-Fuentes and Reyes may amend their complaint no later than **January 7, 2019**. The reasons are set out in detail below.

I.  **Background**

The complaint alleges the following facts. On October 3, 2016, Joseph Gunter was arrested and detained in the Rosenberg City Jail for possession of a controlled substance. (Docket Entry No. 1 at 4). Jail staff did not screen Gunter for mental illness and permitted him to wear his belt. (*Id.* at 4–5). Gunter was not put on suicide watch or continuously monitored. (*Id.* at 5). He was assigned to a single-person cell. (*Id.*). Gunter committed suicide by hanging himself with his belt from a bunk in his cell later that night, during the hours when the jail had fewer staff. (*Id.*). Gunter had a history of suicidal thoughts. (*Id.*).

In June 2018, Ybarra-Fuentes and Reyes sued the City, seven individual defendants, and unknown jail staff, alleging violations of the Fourth,[2] Eighth, and Fourteenth Amendments to the United States Constitution. (*Id.* at 6–7). According to the complaint, Gunter's death "is only one of numerous instances where Rosenberg City Jail has failed to provided needed care" to pretrial detainees. (*Id.* at 6). Ybarra-Fuentes and Reyes contend that jail staff failed to provide Gunter reasonable medical care because it was "highly likely to a casual observer that [he] would enter withdrawal, and be injured, if he was not provided his medications." (*Id.*). Ybarra-Fuentes and Reyes argue that the City and certain officials or employees failed to train jail staff to distribute

---

[2] The complaint alleges that the defendants violated Gunter's Fourth Amendment rights. (*Id.* at 2). Because the plaintiffs failed to plead facts that allege an unreasonable search or seizure, the court dismisses the plaintiffs' claims under the Fourth Amendment.

necessary medication and to put at-risk detainees on suicide watch, monitor them, and remove objects or clothing they could use for self-harm. (*Id.* at 7–8). Ybarra-Fuentes and Reyes also allege that the City and the individual defendants failed to establish policies to protect pretrial detainees who were at risk of suicide. (*Id.*).[3]

## II. The Legal Standards

### A. Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

---

[3] The complaint names as defendants the City of Rosenberg, Warren, Johnson, Carr, Becerra, Gonzales, Armstrong, Halvelka, and unknown employees of the Rosenberg City Jail. (*Id.* at 1). In the causes of action, the complaint names as defendants the City of Rosenberg, Warren, Johnson, the Rosenberg City Jail, Jail Staff Defendants, and "all of the Defendants herein." (*Id.* at 6–9). While the cause of action names those parties, the plaintiffs appear to allege causes of action against only the Rosenberg City Jail and the Jail Staff Defendants. The complaint does not match the named defendants to those against whom a cause of action is alleged. The amended complaint must correct this. *See Halprin v. Fed. Deposit Ins. Co.*, 5:13-CV-1042-RP, 2016 WL 11431534, at *3 (W.D. Tex. Aug. 11, 2016); *Gayton v. Great Lakes Reinsurance (UK) PLC*, No. 7:14-CV-229, 2014 WL 12599508, at *2 (S.D. Tex. July 3, 2014).

*Id.* (quoting *Twombly*, 550, U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (quotation and alteration omitted) (quoting *Twombly*, 550 U.S. at 558).

When a complaint fails to state a claim, the court should generally give the plaintiff a chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (Rule 15(a) "evinces a bias in favor of granting leave to amend"); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A court in its discretion may deny a motion to amend for futility if the amended complaint would fail to state a claim upon which relief could be granted.

*Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court." *Pervasive Software Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012).

### B. The Eighth and Fourteenth Amendments

"Pretrial detainees and convicted prisoners . . . look to different constitutional provisions for their respective rights to basic needs such as medical care and safety." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). "Unlike convicted prisoners, whose rights to constitutional essentials . . . are guaranteed by the Eighth Amendment, pretrial detainees [are protected by] the procedural and substantive due process guarantees of the Fourteenth Amendment." *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000). "[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Hare*, 74 F.3d at 650.

"[C]onditions of confinement . . . must be humane and must not involve the wanton and unnecessary infliction of pain." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (quotations omitted). Pretrial detainees are entitled to reasonable medical care, and "deliberate indifference to serious medical needs of [detainees] constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). That protection extends to detainees' mental health. "The failure to provide pretrial detainees with adequate protection from their known suicidal impulses is actionable under § 1983 as a violation of the detainee's constitutional rights." *Hyatt v. Thomas*, 843 F.3d 172, 179 (5th Cir. 2016) (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 391 (5th Cir. 1992)).

5

Complaints alleging violations of a pretrial detainee's Fourteenth Amendment rights are evaluated "under one of two rubrics, 'jail conditions' or 'episodic acts or omission.'" *Campos v. Webb Cty., Tex.*, 597 F. App'x 787, 791 (5th Cir. 2015) (quoting *Hare*, 74 F.3d at 644–45). In jail-conditions cases, courts "determine '[i]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)). Challenges to episodic acts or omissions, by contrast, "require the plaintiff to prove that the official 'acted or failed to act with subjective deliberate indifference to the detainee's needs.'" *Id.* (quoting *Hare*, 74 F.3d at 647–48). Although plaintiffs prefer the jail-conditions theory because no mens rea is required to establish a claim, *see id.* ("When a jail implements a condition or policy, this manifests an avowed intent to subject a pretrial detainee to that rule or restriction." (quotation omitted)), these claims are "rare," *Shepherd v. Dall. Cty.*, 591 F.3d 445, 449 (5th Cir. 2009). They are limited to "attacks on general conditions, practices, rules, or restrictions of pretrial confinement," *Hare*, 74 F.3d 644. A "plaintiff's claim [usually] faults specific jail officials for their acts or omissions because the plaintiff cannot establish the existence of an officially sanctioned unlawful condition." *Shepherd*, 591 F.3d at 452.

Ybarra-Fuentes and Reyes have asserted claims based on an episodic act or omission. *Compare Campos*, 597 F. App'x at 792 (finding an episodic-acts-or-omissions claim because the plaintiff alleged that an official failed to treat him as mentally handicapped and had placed him in a single cell), *with Brown v. Bolin*, 500 F. App'x 309, 313 (5th Cir. 2012) (finding an episodic-acts-or-omissions claim because the plaintiff alleged that a doctor failed to respond to his serious illness, had received inadequate training in how to respond, and worked in a toxic culture that discouraged

6

the reporting of medical emergencies), *with Shepherd*, 591 F.3d at 450 (finding a jail-conditions claim because the plaintiff "presented extensive evidence on the jail's treatment of inmates with chronic illness").

The complaint centers on the individual defendants, who allegedly failed to screen Gunter for mental illness, place him on suicide watch and continuously monitor him, confiscate his belt, or give him medications. Because Ybarra-Fuentes and Reyes challenge episodic acts or omissions, they must allege an "objective exposure to a substantial risk of serious harm" and that jail "officials acted or failed to act with deliberate indifference to that risk." *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006) (citing *Farmer*, 511 U.S. at 834).

An allegation of negligence is insufficient to state a claim under the Fourteenth Amendment. *Hyatt*, 843 F.3d at 178 ("What is clear is that, even if an officer responds without the due care a reasonable person would use—such that the officer is only negligent—there will be no liability."). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a [detainee's] disagreement with his medical treatment, absent exceptional circumstances." *Rogers*, 709 F.3d at 410. "[D]elay in medical care can only constitute a[ constitutional] violation if there has been deliberate indifference [that] results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quotation and emphasis omitted).

"Deliberate indifference is an extremely high standard to meet." *Gobert*, 463 F.3d at 346 (quotation omitted). To survive a motion to dismiss, a plaintiff must allege facts that could show that jail officials "refused to treat [the detainee], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Rogers*, 709 F.3d at 410. The standard is onerous for pretrial detainees

7

because they lack a "right to the proper implementation of adequate suicide prevention protocols." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (per curiam) (quotation omitted). The protocols not required for a pretrial detainee include psychological screening, continuous monitoring, and the removal of clothing that could be used to inflict self-harm, *see Burns v. City of Galveston, Tex.*, 905 F.2d 100, 104 (5th Cir. 1990); *Gagne v. City of Galveston, Tex.*, 805 F.2d 558, 560 (5th Cir. 1986).

### C. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from liability for civil damages if their conduct does not violate clearly established rights known to an objectively reasonable official. *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016). A municipal actor is entitled to qualified immunity if the challenged conduct was objectively reasonable in light of the legal rules that were clearly established when the acts occurred. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). A court considers whether "the facts alleged show the officer's conduct violated a constitutional right," and whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). A case may be dismissed based on either step in the qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

When a defendant invokes qualified immunity, the plaintiff must demonstrate that the defense does not apply. *McClendon*, 305 F.3d at 323. A district court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "[A] plaintiff seeking to overcome qualified

8

immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* Conclusory allegations and unsubstantiated assertions cannot overcome the defense. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). But "[q]ualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity." *Goodman v. Harris Cty.*, 571 F.3d 388, 396 (5th Cir. 2009).

## III. Analysis

### A. The § 1983 Claim Against the City

Ybarra-Fuentes and Reyes allege that the City is liable under § 1983 for: (1) failing to provide Gunter medical care on his admission to the jail; (2) failing to continuously monitor him; (3) "[f]ailing to adequately train jail staff that a known suicide risk should not be placed in isolation" and "should be provided with needed medication[s]"; (4) "[d]elaying medical assessment of . . . Gunter's mental health condition and need for medications"; and (5) "failing to create and implement policies[] for the protection of" suicidal pretrial detainees. (Docket Entry No. 1 at 7).

Ybarra-Fuentes and Reyes also allege that the City breached its "duty to provide adequate care to pre-trial detainees like . . . Gunter" in violation of the Eighth and Fourteenth Amendments. (*Id.* at 8). They claim that the individual defendants were negligent, and that the City is liable for that negligence under *respondeat superior*, because the individual defendants were City employees or policymakers. (*Id.* at 2–3, 6–8). According to the complaint, Gunter's suicide was one of several, by jail detainees who did not receive care to prevent suicide. (*Id.* at 6). That pattern, the complaint alleges, also makes the City liable under *respondeat superior*, because it put the City on notice of the risk of suicide and made the City's failure to prevent it the result of deliberate indifference. (*Id.*).

9

The City argues that the allegations support a claim of no more than negligence, which is insufficient to state a claim under the Fourteenth Amendment, and that "no defendant had a constitutional duty to take extraordinary actions to prevent Gunter from taking his own life." (Docket Entry No. 4 at 4, 6). The City argues that Ybarra-Fuentes and Reyes failed to allege facts that could establish that "public officers were: (1) aware of facts from which an inference of a substantial risk of serious harm . . . could be drawn; (2) that they actually drew the inference; and (3) that their response indicates subjective intention that the harm occur." (*Id.* at 5 (quoting *Garza v. City of Donna*, No: 7:16-CV-558, 2017 WL 6498392, at *7 (S.D. Tex. Dec. 15, 2017))). The City disputes characterizing defendants Warren and Johnson as policymakers, but maintains that even if they were, "there is no allegation either [defendant] enforced an unconstitutional City policy that caused Gunter to be denied a [constitutional] right." (*Id.* at 6). More broadly, the City contends that Ybarra-Fuentes and Reyes "provide no factual allegations, whatsoever, of culpable conduct by the City." (*Id.* at 5).

To state a municipal liability claim under § 1983, the complaint must allege facts "showing that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (quotation omitted). While "[o]fficial policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations," it "may also be evidenced by custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001). The Fifth Circuit has explained that "custom" means:

> A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy . . . Actions of officers or employees of a municipality do not render the municipality liable under

§ 1983 unless they execute official policy as above defined.

*Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984).

As a threshold matter, the complaint must "specifically identif[y]" the policy that allegedly caused Gunter's suicide. *Piotrowski*, 237 F.3d at 579. Ybarra-Fuentes's and Reyes's complaint's "description of a policy . . . and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). The complaint does not satisfy this pleading requirement. It states only that Gunter "was not monitored as required by the Rosenberg City Jail." (Docket Entry No. 1 at 5). The complaint does not allege facts about the policy, and it does not allege facts that would connect specific policy flaws to a constitutional violation. Gunter was not entitled under federal constitutional law to "adequate suicide prevention protocols," *Taylor*, 135 S. Ct. at 2044, including compelled removal of clothing items, such as a belt, that could be used to commit suicide, *see Gagne*, 805 F.2d at 560.

Even if the complaint specifically identified a City policy, and even assuming that Dallis Warren, Chief of the Rosenberg Police Department, is a policymaker,[4] the complaint still fails to state a claim of deliberate indifference as opposed to negligence. *See Piotrowski*, 237 F.3d at 579 ("[A] showing of simple or even heightened negligence will not suffice."). The conclusory allegation that the City failed to provide adequate training is insufficient for the same reasons. *See*

---

[4] The allegation that the on-duty officer was a policymaker is conclusory and therefore "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The complaint alleges no facts that could show that this officer had "the responsibility for making law or setting policy in any given area of a local government's business." *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010) (quotation ommitted). Instead, the complaint alleges that the on-duty officer had discretion to provide Gunter medical treatment, and to place him in solitary confinement. *See Bolton v. City of Dall., Tex.*, 541 F.3d 545, 549 (5th Cir. 2008) (The "discretion to exercise a particular function does not necessarily entail final policymaking authority over that function.").

11

*Valle*, 613 F.3d at 544 ("The standard applicable to a failure-to-train claim is the same as the standard for municipal liability."). The allegation that Gunter's suicide was one of many is conclusory and fails to describe a particular municipal policy.

Ybarra-Fuentes and Reyes also allege that the City is liable under a *respondeat superior* theory. That is foreclosed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Under *Monell*, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original).

Because the complaint fails to adequately allege municipal liability, the City's motion to dismiss is granted. The claims against the City are dismissed, without prejudice and with leave to amend.

### B. The § 1983 Claims Against the Individual Defendants

To survive the Rule 12(b)(6) challenge to these claims, the complaint must allege specific facts showing (1) that the individual defendants had actual knowledge that Gunter faced "a substantial risk of serious harm," and (2) that the defendants acted "with deliberate indifference to that risk." *Gobert,* 463 F.3d at 345–46. "[W]hether a [jail] official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). "A plaintiff may carry his burden . . . by alleging that the particular risk was 'longstanding, pervasive, well-documented, or expressly noted by [jail] officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.'" *Gray v. Brazoria Cty.*, No. 3:16-CV-109,

12

2017 WL 713797, at *4 (S.D. Tex. Feb. 23, 2017) (quoting *Hinojosa*, 807 F.3d at 665). "[T]he knowledge at issue is that of the officers individually, not collectively." *Id.*

Ybarra-Fuentes and Reyes allege that the individual defendants violated Gunter's Eighth and Fourteenth Amendments rights by: (1) "refusing to provide . . . Gunter with needed medication"; (2) putting Gunter in a single cell; (3) "[f]ailing to remove all possible tools for suicide from . . . Gunter's jail cell"; and (4) [s]poiling or altering government records." (Docket Entry No. 1 at 8). The complaint alleges additional facts about Warren to support his liability under § 1983: (1) he denied Gunter medical intake; (2) he failed to provide Gunter medications; and (3) he failed to continuously monitor Gunter. (*Id.* at 7). The complaint alleges that all individual defendants owed Gunter a duty of care, breached that duty, caused Gunter and his family harm, and were negligent. (*Id.* at 8).

The individual defendants contend that the complaint fails to state a claim under the Fourth, Eighth, or Fourteenth Amendments. (Docket Entry No. 12 at 1). According to the defendants, Ybarra-Fuentes and Reyes "seek to support this civil rights[] lawsuit with bare accusations of alleged negligent activity, but the controlling standard requires allegations which show subjective and objective deliberate indifference." (*Id.* at 4). In addition, the individual defendants argue that the complaint does not allege facts that could "show any individual defendant's personal involvement in any unconstitutional conduct." (*Id.* at 6).

The complaint fails to state a claim against the individual defendants. It does not allege that these defendants knew of any propensity Gunter had for self-harm. Instead, Ybarra-Fuentes and Reyes argue that the individual defendants should have known that Gunter needed to be screened for mental illness. (Docket Entry No. 1 at 5). According to the complaint, the individual defendants

13

should have observed that Gunter was in withdrawal when he was detained, and, for that reason, he was likely to commit suicide. (*Id.* at 6). The complaint does not allege that Gunter disclosed to jail staff that he was in withdrawal, was suicidal or had prescriptions for drugs to treat mental illness. Ybarra-Fuentes and Reyes have not argued that there were "longstanding, pervasive, well-documented, or expressly noted" circumstances suggesting that the individual defendants "had been exposed to information concerning [Gunter's] risk and thus 'must have known' about it." *Gray*, 2017 WL 713797, at *4.

Nor does the complaint allege a factual basis for finding deliberate indifference by any individual defendant. No facts are alleged that could demonstrate "conduct that would clearly evince a wanton disregard for any serious medical needs." *Rogers*, 709 F.3d at 410. While detainees are entitled to adequate medical care, *id.* at 409, there is no right to an intake screening, the confiscation of items that could be used for suicide, or continuous monitoring, *see Taylor*, 135 S. Ct. at 2044; *Burns*, 905 F.2d at 104; *Gagne*, 805 F.2d at 560. Because the complaint alleges, at most, constructive knowledge or negligence, and no constitutional violation, a Fourteenth Amendment claim is not adequately pleaded. The claims against the individual defendants and jail staff are dismissed, without prejudice and with leave to amend. *Hyatt*, 843 F.3d at 178.

## C. The § 1983 Supervisory Liability Claim Against Warren

Ybarra-Fuentes and Reyes allege that Warren is liable under a supervisory liability theory for (1) failing to adequately train infirmary staff, and (2) "failing to create and implement policies . . . for the protection of" suicidal detainees. (Docket Entry No. 1 at 7–8). Warren responds that there "is no factual allegation even *suggesting* [he] violated Gunter's rights." (Docket Entry No. 12 at 6) (emphasis in original). Warren argues that § 1983 does not permit recovery against a

supervisor based on vicarious liability, and that no factual allegation shows a basis to find him liable as a supervisor. (*Id.*).

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). To state a claim for supervisory liability, the plaintiff must allege that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman*, 571 F.3d at 395 (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)).

Deliberate indifference requires that factual allegations in the complaint "demonstrate a pattern of violations and the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Id.* (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). "[F]or a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (quotation omitted). To survive a motion to dismiss, the "plaintiff must allege with specificity how a particular training program is defective." *Id.* "[M]ere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability." *Id.* If a plaintiff fails to plead facts that could establish deliberate indifference, the court "need not address the other two prongs of supervisor liability." *Goodman*, 571 F.3d at 395 (citing *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382 (5th Cir. 2005)).

The complaint does not allege facts that could show Warren acted with deliberate indifference. The complaint makes conclusory statements of a failure to train certain personnel, (Docket Entry No. 1 at 7–8), but it does not "allege with specificity how [Warren's infirmary training program was] defective" or his prior knowledge of the defects and the constitutional risks that followed. *Roberts*, 397 F.3d at 293. Nor does the complaint allege a "pattern of violations" necessary to demonstrate deliberate indifference. *Goodman*, 571 F.3d at 395. The complaint does not allege facts that could show that Warren repeatedly failed to train subordinates, with knowledge of a need for different or better training. There is only a conclusory allegation that Gunter's death "is only one of numerous instances where Rosenberg City Jail has failed to provide needed care" to prevent pretrial-detainee suicide. (Docket Entry No. 1 at 6). Because the complaint does not allege that Warren acted with deliberate indifference to a risk of constitutional violations,[5] the complaint fails to state a claim of supervisory liability. *Goodman*, 571 F.3d at 395. The claims against Warren are dismissed, without prejudice and with leave to amend.

The individual defendants have invoked qualified immunity. (Docket Entry No. 12 at 1). Because the complaint does not state a claim against any defendant, "an analysis of . . . qualified immunity is unnecessary" at this stage. *Goodman*, 571 F.3d at 396 ("Qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity."). It may be reasserted, as appropriate, if an amended complaint is filed.

---

[5] Even if the complaint alleges deliberate indifference, the complaint still fails to state a claim because Gunter did not allege a constitutional violation, as pretrial detainees do not have a right to the adequate implementation of suicide protocols or the removal of clothing that could be used for self-harm. *See Taylor*, 135 S. Ct. at 2044; *Burns*, 905 F.2d at 104; *Gagne*, 805 F.2d at 560.

**IV.      Conclusion**

The claims against the City of Rosenberg are dismissed, without prejudice and with leave to amend, for failure to state a claim under Rule 12(b)(6).

The claims against the individual defendants are dismissed, without prejudice and with leave to amend, for failure to state a claim under Rule 12(b)(6). The court dismisses the claims against defendant Johnson, although he neither answered nor moved to dismiss, because the allegations against him are identical.

The plaintiffs may amend their complaint no later than **January 7, 2019**. The initial conference scheduled for November 30, 2018, at 10:00 a.m. **is canceled; it is reset for February 19, 2019 at 8:30 a.m.**

SIGNED on November 16, 2018, at Houston, Texas.

　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Lee H. Rosenthal
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge